AO 106 (Rev. 04/10) Application for a Search Warrant

Case 2:18-sw-00007-CKD   Document 1   Filed 01/05/18   Page 1 of 18

FILED
JAN 0 5 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

In the Matter of the Search of            )
                                          )
An iPhone with IMEI 352004069015838       )   Case No. 2:18-SW 0 0 0 0 7 —CKD
                                          )
                                          )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A-2, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B-2, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Methamphetamine |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Methamphetamine |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☐ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Trang Le
Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/4/2018

_____
*Judge's signature*

City and state: Sacramento, California        Carolyn K. Delaney, U.S. Magistrate Judge
                                              *Printed name and title*

## **ATTACHMENT A-2**
*Item to be Searched*

An iPhone with IMEI # 352004069015838 and seized on July 28, 2016. The Device is currently in the custody of the Drug Enforcement Administration.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B-2.

## ATTACHMENT B-2
*Items to be Seized*

All records that:

1. Are present on the device described in Attachment A-2;
2. Relate to violations of 21 U.S.C. § 841(a)(1) or 21 U.S.C. §§ 841(a)(1), 846;
3. Involve Gary Roberts; Ruth Kellner; Rodney Sharp; Alfonso Rivera, Jr.; Cesar Erendira Nava; Georgina E. Lopez Quintero; or Ubaldo Lopez Castano; and
4. Relate to the period between about March 3, 2016 and about April 19, 2017.

These records include:

1. Lists of customers and related identifying information;
2. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
3. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
4. Any information recording a schedule or travel between about March 3, 2016 and about April 19, 2017;
5. All bank records, checks, credit card bills, account information, and other financial records;
6. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone, including:
    a. Incoming call history;
    b. Outgoing call history;
    c. Missed call history;
    d. Outgoing text messages;
    e. Incoming text messages;
    f. Draft text messages;
    g. Telephone book;
    h. Data screen or file identifying the telephone number associated with the mobile telephone searched;

1

      i. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;

      j. Voicemail;

      k. User-entered messages (such as to-do lists); and

      l. Stored media such as photographs or video;

7. Any passwords used to access the electronic data described above;

8. Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions;

9. Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

10. Records of Internet Protocol addresses used;

11. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

12. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

McGREGOR W. SCOTT
United States Attorney
AMANDA BECK
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| a Garmin GPS Nuvi Device with identifying numbers 55LM #3A3286169; an iPhone with IMEI 352004069015838; a black Alcatel phone with MEID HEX A100004AD475B7; a black Samsung with S/N 358921058524963; a black ZTE phone with S/N 321742940964; a black and silver Alcatel/MetroPCS phone with IMEI 013911001848681; a black Nokia phone with IMEI 353047066737796, all currently located in the DEA Sacramento District Office | AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICE |

1. I, Trang Le, being first duly sworn, hereby depose and state as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—seven electronic devices described in Attachments A-1 through A-7—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachments B-1 through B-7.

3. I am a Special Agent with the Drug Enforcement Administration and have been since December 2005. I was trained as a DEA special agent at the DEA/FBI Academy in Quantico, Virginia.

AFFIDAVIT                                    1

The sixteen-week course included several hundred hours of comprehensive, formalized instruction in basic narcotic investigations, drug identification, detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, and undercover operations.

4. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and to make arrests for federal felony offenses.

5. I have participated in investigations of traffickers in heroin, methamphetamine, and cocaine. I have also participated in numerous investigations that have involved the use of confidential informants, wire and physical surveillance, telephone toll analysis, investigative interviews, and the service of search and arrest warrants. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances. I am familiar with and aware of the terminology used by narcotics traffickers concerning narcotics and narcotics dealing in particular. I am also familiar with their use of wireless communication technologies such as cellular telephones. The conclusions and opinions set forth below are based on my experience and training as a special agent, my direct participation in this investigation, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation.

6. Because this affidavit is submitted for the limited purpose of setting forth probable cause for the requested search warrants, I have not included each and every fact known to me concerning this investigation, but only what I believe are adequate facts to establish probable cause that evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 will be found in the devices to be searched.

## II. IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. The property to be searched is a Garmin GPS Nuvi Device with identifying numbers 55LM #3A3286169; an iPhone with IMEI 352004069015838; a black Alcatel phone with MEID HEX A100004AD475B7; a black Samsung with S/N 358921058524963; a black ZTE phone with S/N 321742940964; a black and silver Alcatel/MetroPCS phone with IMEI 013911001848681; a black

AFFIDAVIT 2

Nokia phone with IMEI 353047066737796, hereinafter the "Devices." The Devices are currently located in the DEA Sacramento District Office and further described in Attachments A-1 through A-7.

5. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachments B-1 through B-7.

### III. PROBABLE CAUSE

7. This Affidavit seeks authorization to search a Garmin GPS device and six cellular phones, collectively referred to as the "Devices." Law enforcement officers seized the Devices during the July 28, 2016, arrest of Ruth Kellner and Gary Roberts. Also during this arrest, officers seized about 944.8 grams of suspected crystal methamphetamine; $8,610 in cash; a digital scale with white powdery residue; a canister containing a white crystalline substance; and two large zip-lock baggies containing white crystalline substance.

8. Based on my training and experience and upon the shared experience of other agents and officers with whom I have worked, I know that it is common for people involved in narcotics trafficking to communicate with other known and unknown suppliers, distributors, and couriers. I am also aware that it is common for people involved in narcotics trafficking to rely on telephones and GPS devices to execute their schemes. I am aware that GPS devices may contain addresses entered by the user. They may also contain other data, such as a date and time stamps, a log of GPS coordinates for recent trips, and other contextual data.

9. The Devices are in the lawful possession of the Drug Enforcement Administration. They came into the Drug Enforcement Administration's possession in the following way:

10. On July 8, 2016, U.S. District Judge John A. Mendez signed an order authorizing the interception of wire communications over telephone number 530-567-8437 (TT#1), a telephone believed to be used by Alfonso Rivera. Interceptions began on July 9, 2016, and ended on August 7, 2016.

11. On July 23, 2016, at about 7:36 p.m., TT#1 received an incoming call from 530-925-4698. This phone was used by Ruth Kellner, whom agents believed to be a methamphetamine customer of Rivera's. During the call, Kellner said she needed "2." Rivera asked if Kellner could wait. Kellner said that she needed to make money and that she had someone who needed "2" right at that moment. Rivera acknowledged.

AFFIDAVIT                                    3

12. On July 24, 2016, at about 12:12 p.m., Kellner called Rivera on TT#1. During this call, Kellner and Rivera continued discussing the transaction mentioned the previous day. Kellner indicated that she needed "it" right now. She told Rivera that she could give him six thousand right now. She asked Rivera to bring her whatever he could and said that she could give him the rest when she had "Oregon's money." Agents assumed this referred to money she would obtain from a customer in Oregon. Rivera told Kellner not to worry about it.

13. On July 27, 2016, at about 8:58 p.m., Kellner called Rivera on TT#1. During this call, Rivera asked "How many do you need?" Kellner then confirmed that she needed "two." The parties then argued over where to meet to do the transaction. Kellner told Rivera that it was "[y]our turn" to drive to meet her. However, Rivera said he could not do so and, instead, said that "the next, next two times I'll take them to you."

14. On July 28, 2016, at about 11:23 a.m., Kellner called Rivera on TT#1. During this call, Rivera told Kellner that "the guy was supposed to bring it in the morning" but that "he has not called." Agents believed this meant that the methamphetamine supplier had not called. Rivera said that he would "send Gary up there." Agents believed this meant that Gary Roberts would be traveling to Redding, CA. Kellner acknowledged and said she would be in "Redding at 2."

15. At 11:52 a.m., TT#1 made an outgoing call to telephone number (530) 351-5755, a telephone believed to be primarily used by Cesar Erendira Nava ("Nava's phone"). During the call, Rivera told Nava that "the girl is ready and she will go near Redding." Agents believed Nava was referring to Kellner's readiness to buy narcotics. Rivera said that he might have to see "the other lady as well" (another narcotics customer). Rivera and Nava agreed to talk later.

16. At 2:01 p.m., TT#1 made an outgoing call to Nava's phone. Rivera asked if Nava was on his way. Nava replied that he was "just leaving" and that he would be there in about "20 minutes." At 2:21 p.m., TT#1 called Nava's phone again. Nava said that he was just about to arrive.

17. Agents had established video surveillance of 3810 Illinois Avenue, Corning, CA, where they believed Nava lived. This video footage shows that, at about 2:28 p.m., Rivera was walking in front of the residence and wearing a white tank top, blue jeans, and a tan baseball cap. A white Dodge truck bearing California license plate 5T21481 and registered to Gary Roberts was parked near the front

AFFIDAVIT                                                  4

1  door. At 2:29 p.m., Rivera was seen walking out to the front of the property where a black 2011
2  Mercedes SUV was parked. A person wearing blue jeans and a purple top walked to the rear of the
3  black Mercedes, opened the back hatch, and removed a paper bag. The person then walked toward the
4  front driver's side of the Mercedes and out of view. At 2:30 p.m., the black Mercedes left the area.

5      18.     At about 2:10 p.m., Kellner called Rivera on TT#1. During this call, Rivera told Kellner
6  that "Rodney and, and Gary are going," and that "[t]hey been gone."

7      19.     At 2:33 p.m., Rivera was standing near the front door of the residence with a white man
8  wearing a black tank top and black shorts. Agents later identified this man as Rodney Sharp. Rivera
9  was also standing with a second white man wearing jean shorts and no shirt. Agents later identified him
10 as Gary Roberts. Sharp was seen carrying a weighted plastic bag in his hands. Shortly thereafter,
11 Roberts sat in the white Dodge's driver's seat, and Sharp – carrying the white plastic bag – sat in the
12 front passenger's seat. The white Dodge left the property at about 2:34 p.m.

13     20.     Surveillance units followed the white Dodge until about 4:30 p.m., when a California
14 Highway Patrol (CHP) officer stopped it for a traffic violation. When the CHP officer stopped the car,
15 he found that Gary Roberts was in the driver's seat. Rodney Sharp was in the right front passenger's
16 seat. Ruth Kellner was in the left rear passenger's seat, and Richard Clark was in the right rear
17 passenger's seat.

18     21.     Following a narcotics K-9 alert on the vehicle, officers searched the truck. Inside, they
19 found a plastic bag containing about 944.8 grams of crystal methamphetamine as well as about $8,610 in
20 United States currency in the Dodge truck. They also found a Garmin GPS Nuvi Device with
21 identifying numbers 55LM #3A3286169; an iPhone with IMEI 352004069015838; a black Alcatel
22 phone with MEID HEX A100004AD475B7; a black Samsung with S/N 358921058524963; a black
23 ZTE phone with S/N 321742940964; a black and silver Alcatel/MetroPCS phone with IMEI
24 013911001848681; a black Nokia phone with IMEI 353047066737796.

25     22.     Kellner and Roberts were arrested at the conclusion of this traffic stop and then arrested
26 again in April 2017 on federal charges stemming, in part, from the traffic stop. Sharp was arrested in
27 April 2017 on federal charges stemming, in part, from the traffic stop. All three are now charged with
28 violations of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Methamphetamine, and 21

AFFIDAVIT                                                5

U.S.C. §§ 846, 841(a)(1), Conspiracy to Possess with Intent to Distribute Methamphetamine.

23. The Drug Enforcement Administration might already have all necessary authority to examine the Devices. However, I seek these warrants out of an abundance of caution that examining the Devices will comply with the Fourth Amendment and other applicable laws.

### IV. TECHNICAL TERMS

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

a) Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless Device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b) GPS: A GPS navigation Device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications

AFFIDAVIT 6

that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

25. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as wireless telephones and/or, in one case, as a GPS. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27. <u>Forensic evidence.</u> As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b) Forensic evidence on the Devices can also indicate who has used or controlled them. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c) A person with appropriate familiarity with how an electronic Device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d) The process of identifying the exact electronically stored information on a storage

AFFIDAVIT 7

medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

Further, in finding evidence of how the Devices were used, the purpose of their use, who used them, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. <u>Nature of examination.</u> Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

29. <u>Manner of execution.</u> Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

AFFIDAVIT 8

## VI. CONCLUSION

30. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachments A-1 through A-6 to seek the items described in Attachments B-1 through B-6. I submit that there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 will be found on these devices.

Respectfully submitted,

Trang Le
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on: 1/4/2018

The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA AMANDA BECK

AFFIDAVIT                        9

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>An iPhone with IMEI 352004069015838 | ) ) ) ) ) ) ) Case No. 2:18-SW 0 0 0 0 7 - - -CKD |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     California    
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-2, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B-2, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before   1/18/2018   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☐ for     days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of           .

Date and time issued:   1/4/2018 12:30pm       /s/ Carolyn Delaney    
                                                                                                           *Judge's signature*

City and state:   Sacramento, California       Carolyn K. Delaney, U.S. Magistrate Judge    
                                                                                                            *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____              _____
Signature of Judge                                   Date

## ATTACHMENT A-2
*Item to be Searched*

An iPhone with IMEI # 352004069015838 and seized on July 28, 2016. The Device is currently in the custody of the Drug Enforcement Administration.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B-2.

## **ATTACHMENT B-2**
*Items to be Seized*

All records that:
1. Are present on the device described in Attachment A-2;
2. Relate to violations of 21 U.S.C. § 841(a)(1) or 21 U.S.C. §§ 841(a)(1), 846;
3. Involve Gary Roberts; Ruth Kellner; Rodney Sharp; Alfonso Rivera, Jr.; Cesar Erendira Nava; Georgina E. Lopez Quintero; or Ubaldo Lopez Castano; and
4. Relate to the period between about March 3, 2016 and about April 19, 2017.

These records include:
1. Lists of customers and related identifying information;
2. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
3. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
4. Any information recording a schedule or travel between about March 3, 2016 and about April 19, 2017;
5. All bank records, checks, credit card bills, account information, and other financial records;
6. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephone, including:
    a. Incoming call history;
    b. Outgoing call history;
    c. Missed call history;
    d. Outgoing text messages;
    e. Incoming text messages;
    f. Draft text messages;
    g. Telephone book;
    h. Data screen or file identifying the telephone number associated with the mobile telephone searched;

1

      i. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;

      j. Voicemail;

      k. User-entered messages (such as to-do lists); and

      l. Stored media such as photographs or video;

7. Any passwords used to access the electronic data described above;

8. Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions;

9. Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

10. Records of Internet Protocol addresses used;

11. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

12. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.